NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2010[*]
Decided August 5, 2010

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 09-3675

| | |
|---|---|
| CLAY E. RUSSELL, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 07-C-621 |
| | |
| DALE DEVEREAUX, et al., | Rudolph T. Randa, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Clay E. Russell filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that two officers of the Milwaukee Police Department, Dale Devereaux and Andrew Deptula, violated his Fourth Amendment rights when they arrested him in connection with a burglary and searched his vehicle on June 18, 2006. Russell was taken to the police station for questioning and released that same day without being charged. The parties filed cross-motions for summary judgment and the district court granted summary judgment in favor of the defendant police officers. The judge determined that the defendants had probable

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

cause to arrest Russell based on the inculpatory statement of a known thief and Russell's co-conspirator, and thus were entitled to qualified immunity from Russell's suit. Plaintiff-appellant Russell appeals. We affirm the trial judge's grant of summary judgment.

Prior to defendants' search of Russell's vehicle on June 18, 2006, defendants had information that Russell had been involved in a burglary and in the sale of stolen property. Specifically, on August 11, 2005, after receiving information regarding Russell's involvement in a May 9, 2005 burglary from Darnell Bankhead, a known thief and Russell's co-conspirator, the Milwaukee Police Department created a police department memorandum entitled Milwaukee Police Department Investigative Alert (Not a Basis For Arrest)[1] which identified Russell as a suspect in the May 2005 burglary. The officer who prepared the memo cautioned that, to date, he had not confirmed the information from Bankhead connecting Russell to the May 2005 burglary. On August 15, 2005, after receiving additional information from Bankhead concerning property he and Russell had stolen, defendants went to the home of Roy Berry, a purchaser of the property Bankhead and Russell stole. Berry consented to a search of his home and identified for the police the property that Bankhead and Russell sold to him. The police recovered the stolen property from Berry and Berry related that Bankhead and Russell brought him stolen property almost every day between April and June of 2005. Armed with this information, on June 18, 2006, while on patrol, Devereaux and Deptula observed Russell sitting in his car, confronted him, placed him under arrest at the scene, and searched his vehicle without a warrant. The search uncovered drug paraphernalia and power tools matching the description of tools a confidential informant told them Russell had been attempting to trade for drugs or money.

Officers Devereaux and Deptula also searched Russell's vehicle on July 27, 2006, after an informant told them that Russell had again been attempting to trade stolen property for drugs. When the officers approached Russell sleeping in his car, they observed bolt cutters, which Russell admitted were not his. According to the officers, Russell consented to the search of his vehicle and the bold cutters were confiscated. Russell alleges that the July 27, 2006 search was also illegal but failed to explain why that search was illegal. Because he failed to develop any legal argument to support his claim that the July 27, 2006 search of his vehicle was illegal, that claim is waived. *See Fredricksen v. United Parcel Serv., Co.*, 581 F.3d 516, 523-24 (7th Cir. 2009). Russell's appeal briefs also make reference to Detective Donald Laura, but presented no information to support a claim concerning Det. Laura and the

---

[1] A Milwaukee Police Department Investigative Alert is a Milwaukee Police Department memorandum which is filled out by an officer and provides information concerning a crime and a description of the suspect. The memo is for internal use within the police department.

record contains no evidence that Det. Laura was involved in any search of Russell's vehicle. Thus, any claims against Det. Laura concerning the alleged illegal search of Russell's vehicle are waived.

In granting summary judgment in favor of the defendant police officers, the trial court concluded that it was reasonable for the officers to believe their arrest and search of Russell's vehicle on June 18, 2006 was lawful, and thus they were entitled to qualified immunity. In reaching this conclusion, the court noted that, under *New York v. Belton*, 453 U.S. 454, 460 (1981), and *Thornton v. United States*, 541 U.S. 615, 617 (2004), the defendants' warrantless search of Russell's car shortly after he was in custody was constitutional so long as his arrest was lawful. The district judge further explained that recently the United States Supreme Court held in *Arizona v. Gant*, 129 S. Ct. 1710, 1714 (2009) that once an arrestee is in custody, a warrantless search of his recently occupied car is permitted "when it is reasonable to believe that evidence of the offense of arrest might be found" inside the vehicle. The judge noted that because "a broad reading" of *Belton* and *Thornton* had been "widely accepted" in 2006, the time defendants searched Russell's vehicle, the defendants were legally permitted to search Russell's vehicle so long as they had probable cause to arrest him. *See Gant*, 129 S. Ct. at 1722 n.11. The district judge ruled that Bankhead's inculpatory statement made to the police and included in the police department memo provided the officers with probable cause to arrest Russell. Thus, the trial court concluded that the defendants's search of Russell's vehicle was lawful and they are entitled to qualified immunity.

On appeal, Russell argues that the trial court erred when concluding that Bankhead's inculpatory statement concerning Russell's involvement in a burglary given to the police provided the officers with probable cause to arrest him and thus they should not be granted qualified immunity. Specifically, Russell notes that almost one year had passed since Bankhead leveled his accusations, that over one year had passed since the burglary itself, and that the police department memorandum, without more, was not supposed to be the basis of an arrest. He insists that without additional information from further investigation or fresh corroboration, no reasonable officer would have thought that Bankhead's "stale" charges constituted probable cause for his arrest.

When reviewing the grant of summary judgment in favor of the defendants-appellees, we construe the evidence in the light most favorable to the plaintiff-appellant, Russell. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). We review de novo the question of qualified immunity; as the parties have framed it, that question is whether the officers violated Russell's "clearly established" right not to be arrested without probable cause. *See Sandra T.E. v. Grindle*, 599 F.3d 583, 587 (7th Cir. 2010).

Qualified immunity "protects police officers 'who act in ways they reasonably believe to be lawful.'" *Wheeler v. Lawson,* 539 F.3d 629, 639 (7th Cir. 2008) (quoting *Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987)). It also "provides 'ample room for mistaken judgment.'" *Id.* (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).

At the time of the incident in question, June 18, 2006, the law was that when a police officer makes a lawful arrest, "the Fourth Amendment allows the officer to search the passenger compartment of [a] vehicle as a contemporaneous incident of arrest." *Thornton,* 541 U.S. at 617; *see also Belton,* 453 U.S. at 460. The United States Supreme Court recently limited the scope of *Belton* to instances "when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Gant,* 129 S. Ct. at 1714. The Supreme Court further explained in *Gant* that since *Thornton* and *Belton* had been widely accepted, qualified immunity shields "officers from liability for searches conducted in reasonable reliance" on the understanding that officers are legally permitted to search a vehicle subsequent to a lawful arrest. *Id.* at 1723 n. 11.

To establish that an arrest was unlawful in violation of the Fourth Amendment, a plaintiff must prove he/she was arrested without probable cause. *See Williams v. Rodriguez,* 509 F.3d 392, 398 (7th Cir. 2007). An officer has probable cause to make an arrest "if at the time of the arrest, the officers possess knowledge from reasonably trustworthy information that is sufficient to warrant a prudent person in believing that a suspect has committed, or is committing, a crime." *United States v. Brown,* 366 F.3d 456, 458 (7th Cir. 2004). It "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Wheeler,* 539 F.3d at 634 (quoting *United States v. Sawyer,* 224 F.3d 675, 679 (7th Cir. 2000)).

Based on the record before us, it is clear that a reasonable officer would have believed that probable cause supported Russell's arrest in June of 2006. The police department memorandum dated August 11, 2005 contained a statement from Russell's co-conspirator, Bankhead, implicating Russell in a May 2005 burglary. The officers corroborated Bankhead's statement regarding Russell's involvement in the May 2005 burglary through their conversation with Berry and their search of Berry's home. Particularly, Berry confirmed that in mid-2005 Russell and Bankhead were working as a team in jointly committing burglary. Furthermore, the officers' search of Berry's home turned up stolen property; property that Berry stated he had purchased from Bankhead and Russell. Finally, a confidential informant told the officers that Russell had been attempting to trade power tools for drug money.

Russell argues that the police department memorandum alone could not be the basis of the arrest. However, the officer's further investigation, namely Berry's statement that Bankhead and Russell brought him stolen property every day from April to June of 2005 and their search of his home which uncovered stolen property, shows that the police department memorandum alone was not the basis for the arrest. Russell also contends that the probable cause became stale because nearly one year had passed since the defendants' investigation. But probable cause to make an arrest grows "stale only if it emerges that it was based on since discredited information." *United States v. Bizier*, 111 F.3d 214, 219 (1st Cir. 1997). There is no evidence in the record and Russell failed to produced any evidence that discredits the information the officers received during their investigation. Thus, we hold that the officers had probable cause to arrest Russell at the time of his apprehension and the district court appropriately granted defendants' motion for summary judgment.

AFFIRMED.