**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 5 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OSVALDO BERRELLEZA,

Defendant-Appellant.

No. 03-5000

Northern District of Oklahoma

(D.C. No. 02-CR-94-K)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **BALDOCK** , and **McCONNELL** , Circuit Judges.

---

Appellant Osvaldo Berrelleza was stopped by Oklahoma state troopers for speeding in a small town at 3:34 a.m. Various circumstances, including discrepancies in insurance and vehicle registration and unusually high mileage on the vehicle, raised reasonable suspicions that Mr. Berrelleza might be involved as a drug courier. The troopers brought in a trained and certified drug detection dog, which according to a trooper's testimony alerted to the vehicle at several

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

locations. This led the troopers to find that the gas tank had recently been removed. The troopers then transported the vehicle to the police station, where they searched the vehicle and discovered eight shrink-wrapped packages containing cocaine and methamphetamine.

Mr. Berrelleza pled guilty to possession with intent to distribute 4.6 kilograms of cocaine and a quantity of methamphetamine. Mr. Berrelleza entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion and his motion to have "the canine expert" meet the requirements of Federal Rule of Evidence 702, as detailed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Mr. Berrelleza also made a motion to re-open his sentencing hearing to raise the issue of unconstitutional racial profiling. This motion was denied by the district court. This is an appeal of the district court's denial of Mr. Berrelleza's motion to suppress evidence, its denial of the motion with regard to the police dog, and its refusal to re-open the suppression hearing. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

### Background

Mr. Berrelleza was stopped for speeding by Trooper Gene Hise of the Oklahoma State Police. He was going 41 mph in a 35 mph stretch of road in the town of Pryor, Oklahoma. Trooper Hise approached the car and asked for Mr.

Berrelleza's driver's license. Mr. Berrelleza produced a Texas license. Trooper Hise noticed that the vehicle had Ohio plates, had been registered a few days previous to the stop, and had an odometer reading of more than 100,000 miles. Trooper Hise testified that Mr. Berrelleza exhibited extreme nervousness, including avoidance of eye contact and trembling hands. Trooper Hise asked Mr. Berrelleza to step out of his vehicle and come to the patrol car while Trooper Hise ran a check on his license and the car's registration. This check took slightly longer than usual. Because Mr. Berrelleza had not brought the vehicle's insurance verification with him out of the car, Trooper Hise asked his partner, Trooper Perry, to ask the passenger, Mr. Berrelleza's wife, for insurance verification. The verification showed that the insurance for the vehicle was purchased in San Antonio, Texas just hours before the stop.

Finding these facts suspicious, Trooper Hise asked Trooper Perry to walk a drug detection dog around the vehicle. Trooper Perry testified that the dog alerted to the presence of drugs several times, the first being at the front of the vehicle. Thereafter, Trooper Perry examined the vehicle and he noticed that the gas tank bolts had recently been manipulated. All of these indicators led Trooper Perry to believe that he had probable cause to think that the gas tank contained drugs and that it would be reasonable for him to search it. Trooper Perry thereafter informed Mr. Berrelleza and his passenger that his dog had alerted to

drugs and that he and Trooper Hise planned to take the vehicle to a police garage in Pryor, Oklahoma to have the vehicle inspected. There they found vacuum sealed packages containing compressed bricks of cocaine totaling approximately 4.6 kilograms, and some quantity of methamphetamine.

**Analysis**

1. Denial of the Motion to Suppress

The issues raised by the motion to suppress include: 1) whether the initial stop of Mr. Berrelleza was justified; 2) whether he was unreasonably detained; and 3) whether the officers had probable cause to search and seize his vehicle.

A. Standard of Review

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. When reviewing a district court's ruling on a motion to suppress, "we accept [its] factual findings absent clear error and review de novo [its] determination of reasonableness under the Fourth Amendment[,]" all the while viewing the evidence in the light most favorable to the government. *United States v. Olguin-Rivera*, 168 F.3d 1203, 1204 (10th Cir. 1999); *United States v. Baker*, 30 F.3d 1278, 1280 (10th Cir. 1994). "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the

-4-

evidence fall within the province of the district court." *United States v. Browning*, 252 F.3d 1153, 1157 (10th Cir. 2001) (internal quotation marks omitted).

Though we defer to the district court's findings of fact, "we review de novo the ultimate determination of the reasonableness of a search under the Fourth Amendment." *United States v. Leyva-Serrano*, 127 F.3d 1280, 1282 (10th Cir. 1997). Specifically, we examine the events that occurred leading up to the stop to determine whether the "historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

B.      The Initial Stop and Subsequent Detention

The initial stop was well within police powers, because a stop for a traffic infraction, such as speeding, is lawful at its inception. *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001). An officer may also request vehicle registration and driver's license, ask about travel plans, and run driver's license and vehicle registration checks. *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998). Even after this information has been obtained, an officer may detain for further questioning if he has an "objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring" or if the suspect consents to further questioning. *United States v. Zubia-Melendez*, 263

F.3d 1155, 1161 (10th Cir. 2001) (quoting *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994)).

In this case, the district court noted and found credible the troopers' testimony that it is common for drug cartels to supply a courier with a high mileage vehicle that has only recently been registered and insured – all of which were true in this instance. These facts, coupled with Mr. Berrelleza's nervousness, provided the troopers with reasonable suspicion to detain him. *See, e.g.*, *id.* at 1161. It seems that the district court also found the detention reasonable because Trooper Hise had not received the response to the driver's license inquiry before the time the drug detection dog alerted.[1] We agree and find that the initial stop and subsequent detention were reasonable under the Fourth Amendment.

C.   Probable Cause to Search

"Probable cause to search a vehicle is established if, under the totality of the circumstances there is a fair probability that the car contains contraband or evidence." *United States v. Nielsen*, 9 F.3d 1487, 1489-90 (10th Cir. 1993) (internal quotation marks omitted). "Probable cause is measured against an

---

[1]It also bears mentioning that under our precedents inspection by a drug dog "does not implicate Fourth Amendment rights because of the limited information it provides and its minimal intrusiveness." *United States v. Morales-Zamora*, 914 F.2d 200, 203 (10th Cir. 1990); *Hunnicutt*, 135 F.3d at 1349-50.

objective standard"; hence, "[t]he subjective belief of an individual officer as to whether there is probable cause . . . is not dispositive." *United States v. Davis*, 197 F.3d 1048, 1051 (10th Cir. 1999) (internal quotation marks omitted). "In determining whether probable cause exists, an officer may draw inferences based on his own experience." *United States v. Mercado*, 307 F.3d 1226, 1230 (10th Cir. 2002). As this court has previously indicated, "[i]t is well established that evidence of a hidden compartment can contribute to probable cause to search." *Id.*; *see also United States v. Vasquez-Castillo*, 258 F.3d 1207, 1213 (10th Cir. 2001) (finding probable cause to search based on evidence of hidden compartment and smell of raw marijuana); *United States v. Anderson*, 114 F.3d 1059, 1066 (10th Cir. 1997) (holding discovery of "what appeared to be a hidden compartment in the gas tank," along with other evidence, sufficient to furnish probable cause); *United States v. Nicholson*, 17 F.3d 1294, 1297-98 (10th Cir. 1994) (considering, among other factors providing probable cause, a "four or five-inch difference in the truck bottom and the floor which indicated a hidden compartment designed to carry contraband"); *United States v. Arango*, 912 F.2d 441, 447 (10th Cir. 1990) (finding probable cause to arrest based in part on evidence of hidden compartment). It is also well established that as soon as a trained drug detection dog alerts, officers have probable cause to search. *United*

-7-

*States v. Anchondo*, 156 F.3d 1043, 1043-45 (10th Cir. 1998); *Morales-Zamora*, 914 F.2d at 203-04.

Mr. Berrelleza's counsel asked this court to review the video of the stop in question and suggested that the video demonstrates that the dog never "alerted." We have reviewed the videotape. It is true that the dog is not shown to alert before the trooper and the dog enter the vehicle. However, Troopers Hise and Perry testified that the dog alerted in front of the vehicle, outside the coverage of the videotape, and the district court found this testimony credible. *See* Order dated Aug. 7, 2002, 2 n.2, App. 100 (finding that dog alerted "at the front center of the vehicle, the driver's side, and inside the vehicle in the front and rearmost compartment"); *see also* App. 83 (Trooper Perry testifying that the dog first alerted at the front of the vehicle). At a hearing on a pre-trial motion to suppress, "the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." *United States v. Leyva-Serrano*, 127 F.3d 1280, 1282 (10th Cir.1997) (quotation omitted). Here, because the district court made a specific finding that the dog alerted at the front of the vehicle, which is out of view on the video, we must defer to the district court's decision that the officer's testimony is credible. Based on this, the officers had probable cause to search the vehicle, and the

-8-

district court's denial of Mr. Berrelleza's motion to suppress is therefore affirmed.

2.     The District Court's Decision under Rule 702 to Deny a *Daubert* Hearing on the Canine.

In a rather novel tactical move, in district court Mr. Berrelleza's counsel requested a *Daubert* hearing on the canine who alerted to the drugs in Mr. Berrelleza's vehicle. In this Court, Appellant makes no mention of *Daubert*, but argues that "an unscrupulous officer" can use the vague concept of an "alert" to justify a warrantless search whenever he wishes. Appellant's Br. 27-29. It is difficult to tell precisely what legal claim this argument is offered to support. To the extent Mr. Berrelleza is arguing that Troopers Perry and Hise fabricated the claim that the dog alerted, we can only respond that the district court heard the evidence, made a credibility determination in favor of the officers, and concluded that the dog alerted at several points in the vehicle. For reasons noted in the previous section of this opinion, this appellate court has no basis for overturning that factual conclusion. To the extent Mr. Berrelleza is arguing that police officer reports of canine alerts, as a categorical matter, should not be treated as a basis for a finding of probable cause, that argument would be inconsistent with clear precedent in this Court. *See, e.g.*, *United States v. Ludwig*, 10 F.3d 1523 (10th Cir. 1993); *United States v. Williams*, 726 F.2d 661 (10th Cir. 1984). To the extent Mr. Berrelleza is arguing, as he did in district court, that there should have been a *Daubert* hearing to test the expertise of either dog or handler, we review

for abuse of discretion, *United States v. Nichols*, 169 F.3d 1255, 1262-64 (10th Cir. 1999), and reject the argument. Those courts which have considered the issue have properly noted that a *Daubert* hearing is the wrong procedural tool to challenge the reliability of a drug detection dog. *See, e.g.*, *United States v. Outlaw*, 134 F.Supp. 2d 807, 809 (W.D. Tex. 2001). The district court's denial of Mr. Berrelleza's motion to have the dog in this case meet the requirements of Federal Rule of Evidence 702 is therefore affirmed.

3.      Denial of the Motion to Reopen the Suppression Hearing.

After his guilty plea and a change of counsel, Mr. Berrelleza requested that the district court reopen the suppression hearing to consider for the first time the argument that he was a victim of unconstitutional racial profiling. The district court noted that the motion to reopen presented no new evidence or legal support, and denied the motion. The decision to reopen a suppression hearing is within the sound discretion of the trial court and is reviewed for abuse of discretion. *United States v. Wiseman*, 172 F.3d 1196, 1207-08 (10th Cir. 1999). The motion to reopen below rested on a laundry list of facts and speculations, most of which are present in any traffic stop of a member of a minority race that leads to further investigation, and none of which distinguishes this case from the ordinary. Without additional evidence, this Court can not logically find that the district

court abused its discretion. Therefore the district court's denial of Mr. Berrelleza's motion to reopen the suppression hearing is also affirmed.

## Conclusion

The district court's denial of Mr. Berrelleza's motion to suppress, the district court's denial of Mr. Berrelleza's challenge to the canine alert, and the district court's denial of the motion to reopen the suppression hearing are AFFIRMED.

Entered for the Court,


Michael W. McConnell
Circuit Judge